## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Mikhail Shub,

        Plaintiff,

        v.

Residence Inn by Marriott, LLC,

        Defendant.

Case No. 19-cv-5085

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

In 2017, Plaintiff Mikhail Shub slipped in the restroom of a Chicago hotel and suffered injuries. He now sues that hotel, Defendant Residence Inn by Marriott, LLC, for premises liability and ordinary negligence under Illinois law. Defendant has moved for summary judgment. [53]. For the reasons explained below, this Court grants in part and denies in part Defendant's motion.

## I.  Background

The following facts come from Defendant's statement of facts [55], Plaintiff's statement of additional facts [56], and Defendant's responses to Plaintiff's additional facts [59].

### A.  Plaintiff's Slip and Fall

On October 6, 2017, Plaintiff and a friend, Peter Pogue, dined at the Roanoke Restaurant located at 135 W. Madison Street in Chicago. [55] ¶ 12. They arrived at approximately 5:30 p.m. *Id.* At some point during their dinner, Mr. Pogue went to

the restroom located on the second floor of the adjacent Residence Inn hotel. *Id.* ¶ 13. When Mr. Pogue entered the restroom, he saw liquid on the floor. *Id.* ¶ 14. He stepped around it, used a different urinal, and departed the restroom. *Id.* Mr. Pogue does not know how long the liquid had been there, nor the source of the liquid. *Id.* ¶¶ 15, 16.

Mr. Pogue returned to the table at the Roanoke Restaurant and rejoined Plaintiff. *Id.* ¶ 19. From the time he left the restroom and returned to the table, Mr. Pogue did not notify anyone about the liquid on the floor of the restroom, including Plaintiff. *Id.* ¶¶ 19, 20. According to Plaintiff, about five minutes passed after Mr. Pogue returned to the table when Plaintiff went to the same restroom. *Id.* ¶ 22. When Mr. Pogue was asked at his deposition about the amount of time that elapsed between when he returned to the table and when Plaintiff used the restroom, he said "I think it was, like, between, I don't know, 5, 10, maybe 12 minutes, 10 to 15. Not long." [55-9] at 9. Plaintiff guesses he went to the restroom around 7:15 p.m. *Id.* ¶ 23.

Plaintiff entered the restroom and made his way to the urinal. *Id.* ¶ 25. He slipped and fell in front of the urinal. *Id.* As he was walking to the urinal, he was not looking at the floor and did not see any liquid on the floor. *Id.* He first became aware of the liquid when he "looked down" and saw what he slipped on. *Id.* No employee of Defendant Residence Inn was present in the restroom to observe Plaintiff at the time he fell. *Id.* ¶ 24.

### B.    The Aftermath

According to Plaintiff, while waiting for help, he observed condensation/moisture underneath the urinal and water dripping from the underside of the toilet, sounding like "drip-drip-drip-drip-drip."  [56] ¶ 33.  Plaintiff admits, however, that he does not know the source of the liquid on which he slipped.  [55] ¶ 16.

At the time Plaintiff fell, another guest was using the restroom.  *Id.* ¶ 32.  That guest went to "go get somebody" after Plaintiff fell.  *Id.*  Two hotel employees arrived: loss prevention officer Valdemar Chaidez and front office supervisor Elanna Smith. *Id.* ¶ 32.  Mr. Chaidez conducted an inspection of the restroom after Plaintiff fell; he observed liquid on the restroom floor but determined that there was not a maintenance-related condition contributing to Plaintiff's fall.  *Id.* ¶¶ 33–34. According to Mr. Chaidez, if condensation from the urinal were the source of the liquid, it would have taken hours for the puddle of water to form.  *Id.* ¶ 35.  Mr. Chaidez checked the underside of the urinal for condensation and did not see any. [56] ¶ 36.

Ms. Smith noted that the urinals were not clogged or overflowing.  [55] ¶ 36. According to Ms. Smith, the liquid "was just a spill in the front of the urinal."  *Id.* ¶ 37.  The spill was small enough that she could clean it up with a towel and without having to use a mop.  *Id.*  Ms. Smith also determined that a maintenance issue had not caused the presence of the liquid.  *Id.* ¶ 38.

Defendant did not ask building engineer Rich Bazel to perform any work to any part of the bathroom after Plaintiff's alleged fall. *Id.* ¶ 39.

Keith Davis worked as the housekeeping aide for Defendant from 3:00 p.m. to 11:00 p.m. on the day of Plaintiff's accident. *Id.* ¶ 40. Part of his duties included the public restrooms. *Id.* ¶ 41. When he went to the restroom early in his shift that day, at 3:40 p.m., Mr. Davis determined that the floor did not need mopping. *Id.* ¶ 44. Mr. Davis testified that at 3:40 p.m., the floor was "completely dry." *Id.* ¶ 45.

Mr. Davis also went to the restroom around 5:00 p.m., around 6:00 p.m., and around 7:00 p.m. for inspections. *Id.* ¶ 47. According to Mr. Davis, the floor was dry when he inspected the restroom around 5:00 p.m.; in addition, there "were no leaks or dripping sounds." *Id.* ¶ 48. The same was true, according to Mr. Davis, during his 6:00 p.m. and 7:00 p.m. inspections. *Id.* ¶¶ 49, 50. Defendant instructed Mr. Davis to check the restrooms "every hour on the hour," and Mr. Davis followed that practice. *Id.* ¶ 52. As part of his "every hour on the hour" check of the restroom, Mr. Davis checked for cleanliness and would inspect the floor for liquid. *Id.* ¶ 55. Mr. Davis also inspected and cleaned the restroom at 10:30 p.m. on the night of Plaintiff's accident. *Id.* ¶ 51. At that time, he did not see water or leaks, and he did not hear any dripping sounds. *Id.*

Mr. Chaidez is unaware of any other slip and fall injuries in the restroom prior to the incident with Plaintiff. *Id.* ¶ 63. Similarly, Mr. Bazel—the building engineer since the Residence Inn opened—testified that he was unaware of any other slip and falls in the restroom. *Id.* ¶ 64.

4

### C. Plaintiff's Claims and Procedural History

In his complaint, Plaintiff sued Defendant for premises liability (Count I) and negligence (Count II). [1-1]. Plaintiff originally also named Roanoke Restaurant as a defendant, but Roanoke has since been voluntarily dismissed. [1] at 2. Defendant has moved for summary judgment on both claims. [53].

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy that burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia, Illinois*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of

evidence" supporting the non-movant's position does not suffice; instead "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III. Analysis

Plaintiffs alleges negligence against Defendant under both a premises liability theory (Count I) and an ordinary negligence theory (Count II). [1-1]. Courts applying Illinois law[1] recognize "the independence" of these two theories and have allowed plaintiffs to proceed under either or both. *Donald v. Target Corp.*, No. 15 C 5714, 2016 WL 397377, at *1 (N.D. Ill. Feb. 2, 2016) (collecting cases).

Under Illinois law, a plaintiff claiming ordinary negligence must prove the following three elements: (1) the defendant owed a duty of care; (2) the defendant breached that duty; and (3) the plaintiff experienced injuries as a proximate cause of that breach. *Doe v. Coe*, 135 N.E.3d 1, 15 (Ill. 2019).

In addition, under Illinois law, landowners owe business invitees a duty of care to keep premises reasonably safe. *McCarty v. Menard, Inc.*, 927 F.3d 468, 471 (7th Cir. 2019). To establish premises liability, plaintiff must prove the elements of negligence plus an additional three elements: (1) a condition on the property presented an unreasonable risk of harm; (2) the defendant knew or reasonably should have known of the condition and the risk; and (3) the defendant could reasonably have expected that people on the property would not realize, would not discover, or would fail to protect themselves from the danger. *Garcia v. Goetz*, 121 N.E.3d 950,

---

[1] The parties agree that Illinois law applies to Plaintiff's claims. [54] at 8 n.2; [57] at 6 (citing Illinois law).

958 (Ill. App. Ct. 2018); *Rosales v. Menard, Inc.*, No. 17 C 1131, 2018 WL 2299232, at *3 (N.D. Ill. May 21, 2018). This Court will discuss each theory of liability in turn below.

### A.    Premises Liability

Defendant moves for summary judgment on Plaintiff's premises liability theory in Count I, arguing that it lacked actual and constructive notice of the liquid on which Plaintiff slipped. [54] at 10–13. Under Illinois law, no premises liability attaches if the owner lacks actual or constructive knowledge of the alleged dangerous condition. *Barrios v. Fashion Gallery, Inc.*, 255 F. Supp. 3d 728, 731 (N.D. Ill. 2017); *Olivarius v. Tharaldson Prop. Mgmt., Inc.*, 695 F. Supp. 2d 824, 832 (N.D. Ill. 2010).

Actual knowledge only exists "where there is evidence that the defendant or its employee had been notified of the dangerous condition" prior to the plaintiff's fall. *Haslett v. United Skates of Am., Inc.*, 136 N.E.3d 172, 185 (Ill. App. Ct. 2019). No evidence exists to suggest that any of Defendant's employees knew of any liquid on the floor until after Plaintiff fell. Accordingly, Plaintiff cannot demonstrate actual knowledge.

Alternatively, Illinois recognizes constructive notice when a dangerous condition "was so conspicuous that the defendant should have discovered the condition through the exercise of reasonable care." *Racky v. Belfor USA Grp., Inc.*, 83 N.E.3d 440, 461 (Ill. App. Ct. 2017); *see also Nunez v. Diaz*, 98 N.E.3d 431, 442 (Ill. App. Ct. 2021). To demonstrate constructive notice, Plaintiff has offered evidence that: (1) Plaintiff went to the restroom and slipped on its floor at around 7:15 p.m,

[55] ¶ 23; (2) Mr. Davis inspected the restroom at around 7:00 p.m. and determined it dry; he was "usually on time" for his hourly checks and would have been in the restroom "no later than 7:15," [55-5] at 16; and (3) when Mr. Pogue was asked at his deposition about the amount of time that elapsed between when he returned to the table and when Plaintiff used the restroom, he testified: "I think it was, like, between, I don't know, 5, 10, maybe 12 minutes, 10 to 15." [55-9] at 9.

Taking these pieces of evidence together, the timeline shows that: Mr. Pogue went to the restroom and saw the liquid on the floor between 7:00 and 7:15 p.m.; Mr. Davis inspected the restroom and determined it dry between 7:00 and 7:15 p.m; and Plaintiff fell at or just after 7:15 p.m. Based upon this timeline, a jury could conclude that Mr. Pogue saw the liquid *before* Mr. Davis inspected the bathroom, and that Mr. Davis "may have been careless not to have notice the spilled" liquid. *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 605 (7th Cir. 2001) (finding a disputed issue of fact where the plaintiff offered testimony of the existence of a spill that contradicted the defendant's testimony that its employees had not seen a spill, and concluding that the dispute raised an inference of the employees' carelessness). A reasonable jury could find that the liquid was so conspicuous that Defendant should have discovered it through the exercise of due care, and thus, that Defendant possessed constructive notice of the liquid. *Racky*, 83 N.E.3d at 461.

For its part, Defendant disputes this timeline, pointing to Plaintiff's own testimony that he went to the restroom only about five minutes after Mr. Pogue returned. [58] at 7; *see* [55] ¶ 22. If Plaintiff's recollection is more accurate, then it

would be highly unlikely that Mr. Pogue went to the restroom after Mr. Davis inspected it, and thus, also highly unlikely that Mr. Davis was careless in failing to see the liquid. But a jury can decide whether Mr. Pogue's or Plaintiff's testimony is entitled to greater weight. A jury can also determine which party's timeline is entitled to more weight in light of the evidence. *See Bishop v. Air Line Pilots Ass'n Int'l*, 5 F.4th 684, 693 (7th Cir. 2021). Because the record creates a triable issue of fact as to Defendant's constructive knowledge, the Court denies summary judgment to Defendant on Plaintiff's premises liability theory in Count I.

### B.    Negligence

Defendant also moves for summary judgment on Plaintiff's ordinary negligence theory in Count II. In contrast to traditional premises liability, "a different analysis for assessing the scope of a landowner's liability applies when a substance has been placed on the premises by a landowner." *Wind v. Hy-Vee Food Stores, Inc.*, 650 N.E.2d 258, 262 (Ill. App. Ct. 1995). Regardless of whether Defendant had actual or constructive notice of a dangerous condition, Defendant may breach its duty of reasonable care when the allegedly dangerous substance on the premises arises through its own negligence. *Reed v. Wal-Mart Stores, Inc.,* 700 N.E.2d 212, 214 (Ill. App. Ct. 1998); *see also Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). Thus, where a "business invitee, such as a customer at a grocery store, is injured 'by slipping on a foreign substance, the defendant business may be liable if the substance was placed on the premises by the negligence of the proprietor or its agents.'" *Treshuk*, 2021 WL 4282626, at *2 (quoting *Hickey v. Target Corp.*, No. 12-

cv-04180, 2014 WL 1308350, at *3 (N.D. Ill. Apr. 1, 2014)). To create a triable issue of fact, Plaintiff must "present some evidence showing that the substance was more likely placed on the premises through [Defendant]'s negligence rather than a customer's." *Zuppardi*, 770 F.3d at 649.

### 1. Condensation Theory

In his attempt to prove that Defendant fell below the standard of due care, Plaintiff again relies upon a condensation theory, positing that the "urinal's dripping condensation evidences" Defendant's fault in failing to adequately maintain the urinal. [57] at 6. Plaintiff's theory runs into several problems, however. First, the only admissible evidence supporting his theory comes from Plaintiff's testimony that, after his fall, he observed water dripping from the underside of the toilet, sounding like "drip-drip-drip-drip-drip." [56] ¶ 33. Plaintiff admitted, however, that he does not know the source of the liquid he actually slipped on, and he did not know how long the liquid was on the floor; he could only "assume" and "guess" that the liquid he slipped on came from the urinal. [55] ¶¶ 26, 28. Plaintiff's speculation that the liquid causing his alleged fall came from the same place as the condensation he later saw does not suffice to establish a triable issue of fact. *Zuppardi*, 770 F.3d at 650 (rejecting the plaintiff's speculation that a store's employees, rather than a customer, spilled the water contributing to the plaintiff's slip).

Problematically, Plaintiff's theory also assumes that the condensation had to have accumulated for hours because the water drops would have taken time to fall on the ground and create a large enough puddle to cause Plaintiff to fall. *See* [57] at 1,

10

14 (positing that the "circumstantial evidence and admissions indicate" that the "substance was there for hours"). Again, this theory rests upon pure speculation and unsupported by the evidence or reasonable inferences that can be drawn therefrom. The theory requires this Court to assume that water slowly formed throughout the afternoon, creating a larger puddle as each hour passed. Yet there is no evidence that any employee or customer saw any water on the floor all afternoon or evening until Mr. Pogue used the restroom sometime around 7:00 p.m. Further, after Plaintiff's fall, hotel employees Mr. Chaidez and Ms. Smith determined that there existed no maintenance issues with the urinal, and Ms. Smith observed that the liquid resulted from "just a spill in the front of the urinal." [55] ¶¶ 34, 36. They did not ask the building engineer, Mr. Bazel, to perform any maintenance to the urinal. *Id.* ¶ 39. And when Mr. Davis cleaned the restroom at 10:30 p.m. that night, he observed no water or leaking, and he heard no dripping sounds. *Id.* ¶ 51. Plaintiff also does not offer any evidence that the urinal had any prior maintenance issues. The record forecloses Plaintiff's speculation that condensation from the urinal caused the formation of the puddle of liquid on which he slipped.

In pursuing his condensation theory, Plaintiff also references a "subsequent inspection" of the urinal that "revealed rust discoloration" at the low point of the urinal's underside. [57] at 7. He concedes, however, that this inspection occurred in January 2021—"several years" after Plaintiff's accident. *Id.*; *see also* [56] ¶ 5. The fact that a urinal displayed rust discoloration one day is not probative of whether that

same urinal experienced leaks one afternoon more than three years ago. Fed. R. Evid. 401, 402.

Based upon this record, no reasonable jury could find in favor of Plaintiff's theory that condensation from a poorly maintained urinal caused his slip and fall. Plaintiff rests his condensation theory upon only speculation and one piece of out-of-date, irrelevant evidence, and thus, fails to raise a triable issue that the water was "more likely placed on the premises through" Defendant's "negligence rather than a customer's." *Zuppardi*, 770 F.3d at 649.

## 2. Defendant's Cleaning Policies

Plaintiff also contends that a factfinder can infer negligence because Mr. Davis did not mop between the time he began his shift and the time Plaintiff fell, and that his failure to do so violated Defendant's internal policies. [57] at 9. Plaintiff points to no written internal policy, however, mandating such mopping. Plaintiff cites to the Rule 30(b)(6) deposition testimony of Defendant's representative, Tommie Van, who testified that it appeared that Mr. Davis had not mopped the restroom floor the afternoon and evening of Plaintiff's fall because he had not checked off the "mopping" task on a cleaning log he kept. [56] ¶ 17; *see* [55-1] at 22. Van also testified, however, that the log constituted a "guideline" only and that staff did not have to complete all tasks "if no issues existed in that particular area." [55-1] at 18. Mr. Davis similarly testified that he maintained discretion when performing tasks relating to cleaning a restroom. [55-5] at 9. Plaintiff also cites to the deposition testimony of Miguel Tellez, [56] ¶ 17, but he also did not testify that Mr. Davis violated any internal policy by not

mopping, stating—like Tommie Van—that it simply looked like Mr. Davis "didn't check it [mopping] on the checklist here," *see* [55-2] at 15. Thus, Plaintiff offers no evidence showing that Mr. Davis failed to follow Defendant's internal policy.

This Court additionally notes that, even if such an internal policy existed requiring employees to mop the restroom floors at certain intervals, that policy would not by itself establish a legal duty of care. Plaintiff points to *Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of New York, Inc.*, where the Illinois appellate court found that a defendant "written manual is sufficient to create a duty to inspect every 15 minutes." 953 N.E.2d 427, 432 (Ill. App. Ct. 2011). In a more recent case, however, the appellate court criticized its earlier statement from *Newsom-Bogan*, stating that it "respectfully disagree[s]" with it and emphasizing that Illinois law "categorically reject[s] the proposition that an employee's unofficial inspection policy (or even the company's official one) could impose a duty of care on that company independent of the common law." *Tafoya-Cruz v. Temperance Beer Co., LLC*, 178 N.E.3d 182, 196 (Ill. App. Ct. 2020); *see also Rhodes v. Ill. Cent. Gulf R.R.*, 665 N.E.2d 1260, 1272 (Ill. 1996) ("Where the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines."). The Seventh Circuit has also cautioned courts against imposing a standard of due care based upon a defendant's internal policies. *See Zuppardi*, 770 F.3d at 652 (rejecting the notion that the defendant's "internal policy" requiring continuous monitoring created a "new legal standard of ordinary care" because it went "above and beyond the duties required of businesses by Illinois courts"). Accordingly, even if a mopping policy

existed, Mr. Davis' purported failure to follow that policy would not, as Plaintiff argues, demonstrate a breach of the standard of care.

## IV. Conclusion

For the reasons stated above, this Court grants in part and denies in part Defendant's motion for summary judgment [53]. This Court grants summary judgment on Plaintiff's ordinary negligence theory (Count II) but denies summary judgment on Plaintiff's premises liability theory (Count I). This Court sets a status for April 8, 2022 at 10:00 AM, at which time the parties should come prepared to set a trial date and/or inform the Court whether a settlement conference with the assigned Magistrate Judge would be fruitful.

Date: March 25, 2022                    ENTER:


_____

Judge Mary M. Rowland

14